## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| **IN RE: NETGAIN TECHNOLOGY, LLC, CONSUMER DATA BREACH LITIGATION** | Court File No. 21-cv-1210 (SRN/LIB)<br><br>CLASS ACTION<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ORDER FOR JUDGMENT** |

SUSAN RICHARD NELSON, U.S. District Judge

This matter came before the undersigned on October 30, 2025 for a Final Fairness Hearing and on Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement [Doc. No. 137] ("Motion for Final Approval").  Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay, and Robin Guertin (collectively "Named Plaintiffs"), appeared through their attorneys, Kate Baxter-Kauf, Christopher Renz, and Brian Gudmundson (referred to collectively herein as "Class Counsel"). Defendant Netgain Technology, LLC ("Netgain") appeared through its counsel, Henry Pfutzenreuter.

On May 19, 2025, the undersigned preliminarily approved a settlement between the Named Plaintiffs and the Defendant Netgain [Doc. No. 131] (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court provisionally certified a class for settlement purposes (the "Settlement Class"), directed that the parties send notice to the potential Settlement Class members, appointed a Settlement Administrator, appointed representative plaintiffs, and appointed class counsel. In their Motion for Final Approval,

Named Plaintiffs request that the Court formally certify the Settlement Class and determine that the notice provided to the Settlement Class members and the Settlement itself meet the requirements for settlement of a class action under Fed. R. Civ. P. 23. Class Counsel has separately moved for approval and payment of their attorneys' fees and expenses, as well as for service awards for the Named Plaintiffs [Doc. No. 132] (the "Fee Petition"), which the Court will address by separate order. Now, based upon the entire record in this case, and arguments of counsel, the Court grants Plaintiff's Motion for Final Approval, certifies the Settlement Class, and finds the Settlement fair, adequate, and reasonable.

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    The Litigation.

Netgain is a "service provider" who externally manages IT and cloud computing services for companies primarily in the healthcare and accounting industries.[1] (Baxter-Kauf Decl., Ex. A (Settlement Agreement) [Doc. No. 140-1] ("SA") at 1.) Netgain provides a variety of IT-related services to clients, including cloud computing, technical infrastructure, IT management, and service and application management. (*Id*.) In September and November of 2020, criminals illegally accessed information stored by certain customers on Netgain servers (the "Breach"). (*Id*.) In early 2021, Netgain began notifying clients of the Breach. (Compl. [Doc. No. 1] ¶¶ 18–19.)

As a result of the Breach, personal information of individuals—customers of Netgain's clients—was exfiltrated by the hackers. This information included data which,

---

[1] The facts as presented in the Settlement Agreement were agreed to for the purposes of settlement only.

either on its own or with other information, could be used to identify, locate, or contact a person, and included, without limitation, names, email addresses, phone numbers, home addresses, dates of birth, Social Security number (SSNs), drivers' license information, tax records, bank account and routing information, and other personal identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information ("Personal Identifying Information" or "PII").

In the summer of 2021, several Named Plaintiffs filed separate lawsuits [Doc. No. 1] and later filed a joint motion to consolidate the cases, which the Court granted on August 24, 2021 [Doc. No. 34] (collectively, these lawsuits are referred to herein as the "Action"). The Court retitled this consolidated Action as *In re: Netgain Technology, LLC Consumer Data Breach Litigation.* (*Id.*) Plaintiffs then filed an amended complaint combining their claims into one consolidated complaint (the "Consolidated Class Action Complaint") [Doc. No. 35]. Plaintiffs' Consolidated Class Action Complaint asserts claims for negligence, negligence per se, violations of the California Consumer Privacy Act, violations of the California Unfair Competition Law, violations of the Minnesota Health Records Act ("MHRA"), and for declaratory relief, and seeks remedies including damages and injunctive relief for the impact and harm alleged to be caused by the Breach.

Initially, Defendant filed a motion to dismiss arguing that Plaintiffs lacked Article III standing and that their complaint failed to adequately state claims for negligence, negligence per se, violation of the MHRA, and for declaratory and injunctive relief. [Doc. No. 45.] The Court granted the motion in part and denied the motion in part. [Doc. No. 56.]

The Court dismissed Plaintiffs' negligence per se claim and claim for violation of the MHRA. (*Id.*) The parties then engaged in discovery.

### B.    Settlement Negotiations

The Parties participated in multiple mediated settlement negotiations before the Honorable Jeffrey J. Keyes (Ret.) of Keyes ADR. (Baxter-Kauf Decl. [Doc. No. 140] ¶ 3.) As a result of these negotiations, the Parties were able to reach a final Settlement Agreement, which is now before the Court. (*Id.*) Based on the uncontroverted evidence, the Settlement Agreement was negotiated in good-faith and at arms-length.

### C.    The Terms of the Settlement.

Under the Settlement, Defendant agrees to pay a total of $1,900,000 into a non-reversionary fund that cannot be reclaimed by Defendant (the "Settlement Fund"). (SA ¶¶ 1.46, 4.) One primary driver of this settlement is Defendant's financial state as represented by Netgain's attorneys. (SA at 2, ¶ 3.) Plaintiffs were provided access to financial information from Netgain to assess the veracity of these claims. (SA ¶ 3.)

Each Class Member will be able to submit a claim for a documented monetary loss incurred by the Class Member as defined in the Settlement Agreement (a "Documented Loss"), for time spent in a manner defined in the Settlement Agreement ("Lost Time"), or for cash payment. (SA ¶ 4.2.) A Class Member will be able to claim either the cash payment or reimbursement (for a Documented Loss and/or Lost Time). (*Id.*) The maximum amount a Class Member can recover for Documented Loss and/or Lost Time is $5,000.00. (*Id.*) After claims for Documented Losses or Lost Time (if approved by the Administrator) are

calculated, the remaining amount of money in the Settlement Fund will be distributed pro rata to the claimants who made claims for cash payments. (*Id.*)

Defendant also agreed to injunctive relief for a period of three years after the effective date of the Settlement Agreement. (SA ¶ 2.1.) This provision requires that Netgain adopt, continue, or implement: upgrading firewalls, routing through secured gateways, geo-blocking, ensuring its network is configured in a secure and scaleable manner, deploying virus prevention technology across Netgain's data environment, utilizing multi-factor authentication in hosting environments, and backing up data protection. (*Id.*) Class Counsel will be able to verify that Netgain is employing these measures during this three-year period. (*Id.*)

In exchange for the benefits conferred on the Class Members, the Named Plaintiffs and Class Members who do not timely exclude themselves from the settlement by filing a Request for Exclusion prior to the expiration of the Opt-Out Period will be deemed to release Netgain from claims arising from or related to the Data Breach. (SA ¶ 5.) The Opt-Out Period has now concluded and counsel represents that no Opt-Outs were received.

In the Preliminary Approval Order, the court preliminarily certified for settlement purposes the following class:

> all natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their Personal Information may have been compromised in the Attacks.

> Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any entity in which Netgain or its

parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

Further, the court appointed CPT Group, Inc. as the settlement administrator ("CPT" or the "Administrator") to manage the settlement notice and claims process. (SA ¶¶ 7; Baxter-Kauf Decl. ¶ 7.)

### D. Notice Has Been Completed.

Based upon the uncontroverted evidence, it appears the Administrator has completed the Notice program directed by the Court's Preliminary Approval Order. (Decl. of Jennifer Forst ("CPT Decl.") ¶ 3; Supp'l Decl. of Jennifer Forst ("Supp'l CPT Decl.") ¶ 4.) The Administrator completed a 45-day media campaign across multiple media channels, social media, and news platforms that began or about June 19, 2025. (CPT Decl. ¶¶ 12–13.) This campaign included programmatic displays which appeared on desktops and mobile devices accessing relevant websites and apps, social media ads (through Facebook and Instagram), online video ads, paid sponsored search results, an informational press release, and a website. (*Id*. ¶¶ 6-13.) The Administrator maintained these ads and also established a toll-free phone number for viewers to contact and obtain more information. (*Id*.) The Administrator believes these methods have adequately notified the Class Members of the terms of the Settlement Agreement. (*Id*. ¶ 16.) The Administrator received 704,551 total responses. (Supp'l CPT Decl. ¶ 4.) The Administrator evaluated the claim submissions for fraud. (*Id.* ¶ 6.) After completing its review, it reports over 5,000 valid claims, which include 51 claims for out-of-pocket losses, 1,363 claims for lost time, and

4,105 claims for alternative cash payments. (*Id.*) As noted earlier, no Opt-Outs were received within the Opt-Out Period.

## II.    <u>ANALYSIS</u>

In light of notice to the Class and the opportunity to object, the Court may now consider final settlement approval. Fed. R. Civ. P. 23(e); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1397 (D. Minn. 1993); *In re Emp. Benefit Plans Sec. Litig.*, No. CIV. 3-92-708, 1993 WL 330595, at *3 (D. Minn. June 2, 1993); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1402-03 (D. Minn. 1987). First, the Court determines the Settlement class should be certified for settlement purposes. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017), *amended by*, 855 F.3d 913 (8th Cir. 2017). Second, the Court grants final approval of the Settlement Agreement because it is "fair, reasonable and adequate." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

### A. The Class Meets the Requirements for Certification Under Fed. R. Civ. P. 23(a)

First, the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 for certification. Rule 23(a) sets out four prerequisites to certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *White*, 822 F. Supp. at 1402.

The Settlement Class meets each of the requirements of Rule 23(a). It is so numerous as to make ordinary joinder impracticable. There are numerous questions of fact and law common to the class. The Named Plaintiffs' claims are typical of the claims of the class. Finally, the Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

### 1. Numerosity

The Settlement Class consists of approximately two million people. To date, more than half a million people have responded to the Notice. More than five thousand claims have been found to be valid by the Administrator. The Settlement Class is therefore sufficiently numerous.

### 2. Commonality

Second, multiple questions of law or fact are common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is met when plaintiffs' claims "depend upon a common contention" that may be resolved on a class-wide basis. *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349–50 (2011) (acknowledging that "a single common question will do"); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (noting that commonality requires the plaintiff to demonstrate there is "at least one issue whose resolution will affect all or a significant number of the putative class members."). Numerous questions of law and fact would determine Netgain's liability to the Settlement Class. In particular, Named Plaintiffs' negligence and declaratory judgment claims based on Netgain's implementation and maintenance of inadequate data security measures would be determined by Netgain's actions or inactions, and whether that conduct allowed the Data

Breach to occur. Common evidence would dictate the resolution of every Settlement Class member's claim. The Court finds that these issues are common to the entire Settlement Class.

### 3. Typicality

Rule 23(a)(3) requires that plaintiffs' claims "stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982) (citation omitted). The Eighth Circuit has given typicality an "independent meaning" by "requir[ing] a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608 (8th Cir. 1983). Plaintiffs' claims all arise from the Data Breach. The legal claims and grievances are also the same. The Court finds that Plaintiffs' claims are typical of the entire Settlement Class.

### 4. Adequate Representatives

Finally, Rule 23(a)(4) focuses on the representatives of the Class: the Named Plaintiffs and Class Counsel. The Named Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). It "depends upon two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978) (citations omitted).

Named Plaintiffs have retained qualified and experienced lawyers who have practiced in this field of law. Further, Named Plaintiffs are not antagonistic to the remaining class members and are not seeking relief separate from the remainder of the Class. The Court finds that the Named Plaintiffs and Class Counsel will adequately represent the Settlement Class.

### B. The Class Meets the Requirements for Certification Under Rule 23(b)

The Settlement Class also satisfies the requirements of Rule 23(b)(3) because questions of law and fact predominate over any individual issues or questions and class treatment is superior to other methods for fairly and efficiently resolving this case. Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as

to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (citation omitted).

Here, there are common questions of law and fact pertaining to Plaintiffs' negligence and declaratory judgment claims. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Class Members. All of the issues related to negligence – duty, breach, causation and damages – can be resolved on a class-wide basis. First, there is the legal question affecting all Class Members as to whether Netgain owed a duty to them to take reasonable care in managing and protecting their Personal Identifying Information. Second, Plaintiffs must establish that Netgain breached that duty by failing to act reasonably in protecting the Personal Identifying Information and by using inadequate systems, procedures, and personnel to prevent the disclosure and theft of the Personal Identifying Information. Proximate cause is also a common legal issue because Plaintiffs must prove that the Data Breach and Netgain's failure to appropriately safeguard its systems, resulted in compromised Personal Identifying Information and ultimately caused Plaintiff and the Class to incur harm. In all, the common issues of duty, breach, and causation overwhelmingly predominate over any remaining individualized issues.

### 2. Superiority

Under Rule 23(b)(3), the Court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior when "the class members' claims are generally small and unlikely to be pursued individually." *Stuart*, 910 F.3d at 377. Manageability concerns

are therefore relevant to determining whether a class action is a superior means of adjudication. *See Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 986 (8th Cir. 2021). Litigating the same claims of hundreds of thousands of class members and requiring the presentation of the same evidence and expert opinions each time is clearly inefficient. Here, the Data Breach affected millions of people located across the United States. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and motion practice throughout the nation and therefore will promote judicial economy and efficiency. Additionally, many Settlement Class members are individuals who would receive relatively small awards. These potential awards would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, superiority is satisfied.

### C.  Legal Standards for Approval of a Settlement

To be approved under Fed. R. Civ. P. 23, a proposed class settlement must be fair, adequate and reasonable, *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988), and "not the product of fraud or collusion" between the parties.  *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015).

### D. Factors to Be Considered

In determining whether a settlement is fair, adequate and reasonable, the Court considers the balance between the relief obtained and the likelihood of success on the merits. *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 691 (D. Minn. 1994), *amended by*, 858 F. Supp. 944 (D. Minn. 1994); *accord Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Van Horn*, 840 F.2d at 607. Other factors the court considers

include: the complexity, expense, and likely duration of further litigation; the experience of counsel; the negotiation process; the extent of discovery and stage of the proceedings; and the reaction of the Class. *Van Horn*, 840 F.2d, at 607; *Holden*, 665 F. Supp. at 1407.

Each of these factors is discussed below and supports approval of the Settlement.

### 1. The Relief Obtained Balanced by the Likelihood of Success on the Merits

The agreement in this case is a good result for the class in light of the difficult issues facing both parties at trial. Settlement Class Members now have a certain remedy. Named Plaintiffs and Class Counsel believed that they could have succeeded on certifying a class given the strength of their claims. However, they were all too aware of the risks that come with proceeding forward in a data breach class action. (Baxter-Kauf Decl. ¶ 4.) Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-cv-2522 (PAM/JJK),

2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rev'd on other grounds*, 847 F.3d at 611, 615, *amended by*, 855 F.3d 913. Through the Settlement, Named Plaintiffs and Class Members gain significant benefits without having to face further risk. In view of the uncertainties, the result is an excellent one meriting the approval of the Court. *See In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *4. This factor weighs in favor of approving the Settlement.

### 2. The Complexity, Expense and Likely Duration of the Litigation Would Be Considerable Were the Action to Continue

It is indisputable that continuation of this litigation would be complex, costly and of substantial duration. These practical considerations favor approval of the Settlement. *Heller v. Schwan's Sales Enter.*, 548 N.W.2d 287, 290 (Minn. Ct. App. 1996) ("[T]he settlement provides relief faster and with fewer transaction costs than full litigation."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) (stating similar considerations).

Although the efforts of Class Counsel have advanced this litigation considerably since its inception, significant additional resources would be necessary to prosecute the case through completion of full discovery, class certification, dispositive motions, and pretrial and trial proceedings. (Baxter-Kauf Decl. ¶ 4); *see Schmidt v. Fuller Brush* Co., 527 F.2d 532, 535 (8th Cir. 1975) (finding class actions "place an enormous burden of costs and expense upon the parties".). Further, a judgment favorable to Plaintiffs may be the subject of post-trial motions and appeals. An appeal would substantially prolong the case, and delay the ultimate payment to members of the Class, in the event Plaintiffs were to

prevail. Instead, the Settlement provides for the cessation of litigation costs and immediate and certain payment to Class Members. Accordingly, the complexity, expense and likely duration of continued litigation weigh in favor of approval of the Settlement.

### 3. The Proposed Settlement Was the Product of Informed, Good Faith Negotiations by Parties Thoroughly Conversant with the Strengths and Weaknesses of the Case

The Settlement was negotiated at arm's-length by Class Counsel and counsel for Defendant by the Honorable Jeffrey Keyes, United States Magistrate Judge (Ret.), acting as a mediator, in extensive negotiations. (Baxter-Kauf Decl. ¶ 3.) Counsel appearing for the Named Plaintiffs understood the strengths and weaknesses of the case and have many years of experience in conducting complex class action litigation. *See In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *3 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."); *Heller*, 548 N.W.2d at 291 (in approving class settlement, court recognized appointed class counsel to be competent litigators with extensive class action experience).

The participation of an independent mediator is further indicative of the fairness of the proposed Settlement. *See Khoday v. Symantec Corp.*, No. 11-CV-180, 2016 WL 1637039, at *7 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016). Thus, the Court finds that the Settlement is the product of arm's-length negotiations.

Additionally, the progress of the case favors settlement.  Class Counsel encountered and dealt with complex issues at various stages of this litigation. Numerous plaintiffs filed potential class action complaints that required consolidation. [Doc. No. 34.] Netgain filed

15

a motion to dismiss raising various legal arguments [Doc. No. 45], several of which succeeded, and led to the narrowing of the claims in this action. In the next stage of this case, Plaintiffs would have filed a complicated class certification motion which would have required extensive legal research and briefing. (Baxter-Kauf Decl. ¶ 4.)

This factor strongly favors approval of the settlement. *Accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

### 4. The Favorable Reaction of the Class to the Settlement Supports its Approval

Settlement Class members have had an overwhelmingly positive response to the Settlement. They received notice pursuant to a plan carefully crafted to ensure due process. As the Supreme Court explained in *Mullane v. Cent. Hanover Bank & Trust Co.*, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). "[W]hat qualifies as a 'reasonable effort' is a case-specific question subject to the wide discretion of the trial judge." William B. Rubenstein, *Newberg on Class Actions* § 8:8 (5th ed. 2015). However, identifiable class members are entitled to individual notice, i.e., direct-mailed notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

In this case, CPT Group executed the Notice, which included a 45-day media campaign online with particular focus on states where companies involved in the data breach were located. (CPT Decl. ¶ 6-13.) The campaign included a programmatic display,

social media ads, paid search result emphasis, press releases in multiple places, and a unique website. (*Id*.) CPT received 704,551 claims. (CPT Supp'l Decl. ¶ 4.) The Administrator used a service called ClaimScore to evaluate the initial claims for fraud. (*Id.* ¶ 6.) It ultimately approved over 5,000 valid claims, which included 51 claims for out-of-pocket losses, 1,363 claims for lost time, and 4,105 claims for alternative cash payment. (*Id.* ¶ 8.)

The Process used by the Administrator in determining whether claims are valid is also reasonable and fair. ClaimScore recommends using a claim threshold of 700 to determine whether a claim is presumptively invalid. Those that filed invalidated claims are given an opportunity to appeal the determination and the Administrator has reserved a portion of the Settlement Fund to provide awards for appealed claims. The number of potentially fraudulent claims is a bit high, but this is explained by the lack of a class list and the method of notice used here. Not only does ClaimScore provide a basis to conclude these claims are invalid, but the Administrator's digital payment vendor also performed a secondary verification by checking for suspicious IP addresses, international PayPal accounts, and IP addresses that do not match the listed states.

Requests for exclusion from the Settlement Class and objections to the settlement were due on September 2, 2025. (PA Order at 13.) Claim Forms were due on September 17, 2025. (*Id*.) No written objections to the settlement were received. (CPT Decl. ¶ 21.) As noted earlier, there were no requests to be excluded from the Settlement. These are powerful indicia that the Settlement is fair, adequate, and reasonable and deserves final approval. *See Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D.

Fla. Dec. 17, 2014) (noting where objections from settlement class members "equate[] to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement[.]") This factor weighs in favor of approval of the Settlement.

### E.  Notice to the Class Satisfies Requirements of Fed. R. Civ. P. 23 and Due Process

Notice to the Class satisfies  the requirements of Federal Rule of Civil Procedure 23 and due process. More than half a million individuals have submitted claims after the media campaign was completed. The campaign targeted states where affected Netgain clients were located, and included news releases, a unique website, online ads, and search result prioritization. (CPT Decl. ¶¶ 17-23.)

## III.  <u>ORDER</u>

In accordance with the foregoing Findings of Fact and Conclusions of Law, the Court enters the following Order:

1.    The Settlement is Approved and the Plaintiffs' Motion for Final Approval [Doc. No. 137] is **GRANTED** because it is fair, adequate, and reasonable.

2.      This Court has jurisdiction over the subject matter of this litigation and over the parties to the Settlement Agreement, including all members of the Settlement Class and the Defendant.

3.      The Court adopts and incorporates herein the findings made under Fed. R. Civ. P. 23 in its Preliminary Approval Order [Doc. No. 131].

4.      The Court considered the complexity, expense, and likely duration of the litigation, the Class's reaction to the settlement, and the result achieved.

5.      The Settlement was attained following an extensive investigation of the facts. It resulted from vigorous arm's-length negotiations, which were undertaken in good faith by counsel with significant experience litigating complex class actions.

6.      The following Class is finally certified under Rule 23(b)(3):

    a.      All natural persons who are residents of the United States whose PII was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their PII may have been compromised in the Attacks.

    b.      Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; and (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any

entity in which Netgain or its parents have a controlling interest, and its current or former officers and directors.[2]

7.     The Court hereby affirms its ruling in the Preliminary Approval Order appointing Gayle Blatt, Christopher Renz, and Brian Gudmundson as Class Counsel.

8.     The Court hereby affirms its ruling in the Preliminary Approval Order certifying Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay, and Robin Guertin as the Class Representatives.

9.     The Settlement Fund, into which Defendant will deposit a total of $1,900,000 as detailed in the Settlement Agreement, plus accrued interest thereon, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 458B and the Treasury Regulations promulgated thereunder.

10.    This Court hereby dismisses on the merits and with prejudice all Claims in the Plaintiffs' action against Defendants, with each party to bear its own costs and fees, including attorneys' fees, except as provided in the Settlement Agreement.

---

[2] The Settlement Agreement also contained a provision to exclude the following from the Settlement Class: (1) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (2) the successors or assigns of any such excluded natural person. Because no Opt-Outs were received during the applicable time period, these two excluded groups are moot.

11.     The Release in the Settlement Agreement is incorporated herein and the Class Members shall, by operation of law, be deemed to have released the Released Parties from the Released Claims. All entities who are Class Members (as defined in the Settlement Agreement) or who purport to assert claims on behalf of the Class Members are hereby and forever barred and enjoined from commencing, prosecuting, or continuing, against the Released Parties, in this or any other jurisdiction, any and all claims, causes of action or lawsuits, which they had, have, or in the future may have, arising out of or related to any of the Released Claims as defined in the Settlement Agreement.

12.     The Released Parties are hereby and forever released and discharged with respect to any and all claims or causes of action which the Class Members had, have, or in the future may have, arising out of or related to any of the Released Claims as defined in the Settlement Agreement and Class Counsel's Motion for Payment of Attorneys' Fees, Litigation Expenses, and Service Awards.

13.     The Court finds the dissemination of the Notice given to the Settlement Class was the best notice practicable under the circumstances. It provided sufficient notice of the proceedings and of the matters set forth therein, including the proposed Settlement Agreement, to all persons entitled to such notice, and fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.

14.   No objections to the Settlement or to Plaintiffs' currently pending Motion for Payment of Attorney's Fees, Litigation Expenses, and Service Awards ("Plaintiffs' Fee Petition") have been filed.

15.   As set forth in the Notice to the Settlement Class, the Court will rule on Named Plaintiffs' pending Fee Petition in a separate order.

16.   Any member of the Settlement Class who failed to timely and validly request to be excluded from the Settlement Class shall be subject to and bound by the provisions of the Settlement Agreement, the Released Claims contained therein, and this Order with respect to all Released Claims, regardless of whether such members of the Settlement Class seek or obtain any distribution from the Settlement proceeds.

17.   Without affecting the finality of the Final Judgment in any way, this Court retains continuing exclusive jurisdiction over: (a) the consummation, administration, and implementation of the Settlement Agreement and any allocation or distribution to Class Members pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) applications by Plaintiffs for attorneys' fees, costs, expenses, and interest; (d) any actions in this litigation until the Final Judgment has become effective and the parties have performed all agreed-upon acts under the Settlement Agreement; (e) any matters relating to any plan of allocation or distribution of proceeds from the Settlement; (f) the parties to the Settlement Agreement for the purpose of enforcing and administering the Settlement Agreement and the releases

contemplated by, or executed in connection with, the Settlement Agreement; (g) the enforcement of the Final Judgment; and (h) any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, that cannot be resolved by negotiation and agreement.

18.    Defendant has served upon the appropriate state officials and the appropriate federal official notice under the Class Action Fairness Act, 28 U.S.C. § 1715.

19.    The Settlement Administrator will proceed with disbursing the funds in the Settlement Fund in the order and in the amounts provided in the Court's separate Order concerning the Fee Petition as well as the Settlement Agreement.

20.    The Court finds, pursuant to Rules 54(a) and (b) of the Federal Rules of Civil Procedure, that judgment should be entered and further finds that there is no just reason for delay in the entry of final judgment as to the parties to the Settlement Agreement. Accordingly, the Clerk is hereby directed to enter Judgment consistent with this Order Granting Final Approval of Class Action Settlement, Certification of Settlement Class, and Order for Judgment forthwith.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

November 3, 2025                                  s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge